ROBINSON *v.* SOLOMON.

1. CANCELLATION OF INSTRUMENTS—CONTRACTS — UNCONSCIONABLE CONTRACT.

   The charge that a contract giving defendants security for the advancement of funds for the removal and operation of plaintiff's saw mill, enabling plaintiff to perform a prior contract with defendants for sawing their timber, which he considered of value to him, was unconscionable was not warranted, merely because subsequent events demonstrated that it was an unfortunate engagement for plaintiff.

2. SAME—BUYING PEACE.

   The aiding of plaintiff to keep his legitimate contract and insisting upon performance warrants no charge of making him buy his peace.

3. SAME—LEGITIMATE CONTRACT.

   A contract under which defendants were to advance funds for the performance by plaintiff of a prior contract with them and be repaid out of plaintiff's returns under the first contract, was legitimate.

4. SAME—DEDUCTION OF FRAUD NOT WARRANTED.

   That plaintiff, before entering into the second contract with defendants, offered to turn his mill over to them if they would release him from his prior sawing contract and his obligation for advancements already made, warrants no deduction that they fraudulently induced him to enter into such contract.

5. SAME—DELAY—LACHES—EQUITY.

   Plaintiff could not enter into such a contract, assist in carrying it out, and let it proceed along for two years, and then come in and claim it was procured by fraud and have it wholly vacated.

6. SAME—FRAUD NOT SUSTAINED.

   The allegations of fraud in obtaining the contract, *held*, not sustained by the record.

7. LOGS AND LOGGING — CONTRACTS — CONSTRUCTION — WORDS AND PHRASES.

   The term "labor conditions," as used in a contract for the sawing of timber, authorizing temporary suspension by

the contractor for "strikes, labor conditions, and lockouts," is *held*, to refer to the scarcity of labor alone, and bears no relation to the cost of labor.

8. CHATTEL MORTGAGES—BREACH OF CONDITIONS—FORECLOSURE.

Equity will not permit the breach of conditions of a contract for security upon a saw mill for advancements to move, reconstruct, and operate the mill to operate as a foreclosure, but, after an accounting, if there is an amount due defendants, they should be awarded a decree of foreclosure.

Appeal from Iosco; Widdis (Albert), J. Submitted January 2, 1923. (Docket No. 16.) Decided April 27, 1923. Rehearing denied June 23, 1923.

Bill by Samuel A. Robinson against Selig Solomon and others, copartners as Solomon-Hayes-Cowley Company, to set aside certain contracts on the ground of fraud, and for an accounting. From a decree for plaintiff, defendants appeal. Reversed and remanded.

*Victor Spike,* for plaintiff.

*I. S. Canfield,* for defendants.

WIEST, C. J. Plaintiff owned a saw mill at Goodar, Ogemaw county, and the run of sawing there having ended, and learning that defendants had considerable holdings of timber on the Au Sable river division of the Detroit & Mackinac railroad and the Au' Sable river and its tributaries, he entered into a contract with them, on August 23, 1916, to move his mill to Au Sable or Oscoda and locate it on a site to be provided by defendants, and saw the logs of defendants into lumber during the logging season of 1916-17, and following seasons, at agreed prices. The contract contained the following:

"It is mutually agreed that delivery of logs under this contract by first parties in any one year shall be subject to any material slump in the market price of lumber, labor conditions, strikes and lockouts and to

any unavoidable casualty, and the manufacture of logs into lumber by second party shall also be subject to strikes, labor conditions and lockouts and any unavoidable casualty."

Finding his finances would not enable him to move the mill, plaintiff, on December 7, 1916, gave defendants a bill of sale of his mill, as security, and they indorsed three of his notes amounting to $5,000. The same day an agreement was also signed by the parties relative to such indorsements and the purpose thereof, and the prospective release of the bill of sale. Plaintiff was still unable, financially, to move the mill and was also unwell and, on February 8, 1917, he entered into an agreement with defendants, giving them full supervision over the moving of the mill and requiring them to pay the expense thereof, but with power to operate the mill when reconstructed and apply the net earnings arising from the carrying out of plaintiff's sawing contract to repayment of the moneys advanced for the removal, reconstruction and operation of the mill. Plaintiff agreed to reimburse defendants for all moneys so advanced and allow the net profits from the operation of the mill and the sale of byproducts, determined under the terms of the contract of August 23, 1916, to apply upon such advances, and if in two years from May 1, 1917, defendants should not be reimbursed, then all earnings to be applied on the depreciation or deterioration of the mill, machinery, etc., and the earnings to belong to defendants without any rights remaining to plaintiff under the agreement of February 8th, or the first agreement or the bill of sale. This left the original contract, under which plaintiff was to move his mill and saw lumber for defendants, in full force, at least up to May 1, 1919, but gave the management and the financing of operations into defendants' hands, with security looking toward their reimbursement.

At the time this last agreement was executed plain-

tiff was sick and discouraged and had made but small progress in moving the mill, and he offered to turn the mill over to defendants if they would release him from his obligations. His obligations at that time consisted of the contract for sawing and the $5,000 obtained on defendants' indorsements. On that date the mill was worth only its scrap value of possibly $5,000, unless its removal was completed and it was reconstructed and employed in sawing logs. Instead of accepting such offer defendants proposed the arrangement made. The moving of the mill was completed by defendants and they paid plaintiff a salary thereafter for his assistance in the removal and reconstruction of the mill and paid all expenses of such removal and reconstruction, and the expenses of operating the mill.

Defendants operated the mill, commencing in June, 1917, and furnished plaintiff with statements of expenses and income. The cost of moving, reconstructing and operating the mill up to May 1, 1919, after crediting plaintiff, under his contract for sawing, amounted to $54,971.63, according to defendants' claim. Defendants offered to throw off $20,000 of this and let plaintiff take his mill if he would pay the balance. Plaintiff declined and filed the bill herein to have the contract of February 8, 1917, adjudged void for fraud in inducing him to sign it, and defendants made to account for the use of the mill.

The trial judge set aside the contract of February 8, 1917, decreed the bill of sale, dated December 7, 1916, a mortgage, and defendants mortgagees in possession, with the title to the mill and its appurtenances and to the lease of the milling and piling grounds in the plaintiff. The court also found:

"That the compound word, 'labor-conditions,' in the contract of August 23d, 1916, means the price which plaintiff would find it necessary to pay for labor in the manufacture of defendants' logs into lumber and lath and that it is not an ambiguous term."

The court directed further testimony to be taken relative to an accounting between the parties.

It is stated in the brief of counsel:        .

"The plaintiff claims, in respect to the contract of February 8, 1917, that it is so unconscionable in its terms and was executed under such circumstances of imposition, circumvention, fraud, undue influence and gross inequality, and at a time when the plaintiff was placing confidence in the defendants, and was suffering from a nervous breakdown and was worried to the point of distraction over his wife's health, and his own financial business matters and when, as a result thereof, and of the urgings and importunities of the defendants, he was in such a condition of mind that he could not and did not comprehend the full import of the contract and was willing to make any kind of a sacrifice, even to the point of giving away his mill property, valued at $40,000, in order to gain what, to his then weakened mind, appeared to be relief from his worries and troubles; all of which was well known to the defendants, and of which they took advantage to induce him to execute the contract; that it does not represent that full and free meeting of minds necessary to the validity of a contract, and that the same is therefore void."

This is a formidable arraignment and would entitle plaintiff to relief if established by the proofs. What was there unconscionable about the contract of February 8, 1917? Subsequent events have demonstrated that it was an unfortunate engagement for plaintiff but this does not warrant the charge that it was unconscionable, and loses sight entirely of the fact that the loss came through operation of the mill according to the terms of the first contract. But, it is said, the first contract did not require plaintiff to saw any given quantity of logs in a given time. This begs the question. Plaintiff was of the opinion that the first contract was of value to him, and it bound defendants to supply him with a run of logs to keep his mill busy.

The circuit judge was of the opinion:

"That the plaintiff was not bound by the contracts of August 23, 1916, and December 7, 1916, to manufacture any amount of lumber within any specified time; that in neither of these contracts was time made as of the essence of it; that therefore, in so far as his obligations under them were concerned, there was no peace for him to buy, however much, he, in his over wrought condition, may have imagined that there was.

"For, in so far as these contracts bound him, he could have ceased his rebuilding operations before February 8, 1917, and could have refused to resume operations until the arrival of a more propitious time, without insuring liability to the defendants."

Aiding plaintiff to keep his legitimate contract and insisting upon performance warrants no charge of making plaintiff buy peace.

The learned circuit judge seemed to be of the opinion that this bore directly upon the charge that the contract of February 8th was unconscionable and fraudulent. We do not agree with the inference so drawn. The facts and circumstances negative the charges made. No one knew at the time of the contract of February, 1917, what it would cost to move and reconstruct the mill, and plaintiff knew best whether it could be operated under the first contract prices at a profit. Having entered into the contract with plaintiff, under which he was to move his mill and saw the logs, defendants wanted that contract performed and they had a right to ask and plan that it be carried out. Plaintiff was under obligation to perform that contract. Performance was arranged by the last contract under which the expense of performance was to be met, in the first instance, by defendants and they to be repaid out of plaintiff's returns under the first contract. This was legitimate. When the parties agreed upon the contract of February 8th, defendants had a right to insist upon

performance of the first contract.  They wanted their logs cut into lumber.  The fact that defendants did not accept plaintiff's offer to turn his mill over to them, if they would release him from his sawing contract and the indorsement obligation, warrants no deduction that they fraudulently induced him to enter into such contract.  The so-called unconscionable contract was merely one to carry out and to assist plaintiff in carrying out the first contract.

Plaintiff appears to have been rather slow in discovering the fraud he now claims.  Upon entering into the contract he immediately gave his attention to the carrying out of its provisions; he took part in moving the mill and reconstructing it and was placed on the pay-roll of defendants and received $30 per week for his services.  He was furnished statements from month to month of the expenses of operation and of the returns.  If advantage was taken of his weakened physical condition, on account of sickness and his distress of mind over the sickness of his wife, to get him to enter into this contract, certainly he was fully conscious of what the contract was when he actively engaged in carrying it out and received pay for his work.  He could not enter into such a contract, assist in carrying it out, and let it proceed along for two years, and then come in and claim it was procured by fraud and have it wholly vacated.

We have gone over this record and find no fraud perpetrated in obtaining the contract of February, 1917.  The question of the effect of the contract will be taken up later in the opinion.

The term "labor conditions" does not constitute a compound word, but each word carries its own sense and as here employed they relate solely to ability to obtain workmen.  The term relates to an excuse for temporary suspension on account of a plight, and not to increased compensation for performance.  The

term "labor conditions" is sandwiched between the terms "strikes" and "lockouts," and clearly refers to the scarcity of labor and for that reason, justification for a temporary suspension, and bears no relation to the cost of labor. Upon the meaning of the term "labor conditions" the testimony of the plaintiff was wholly inadmissible. Plaintiff has not established the fraud charged and, therefore, is not entitled to have the contract of February, 1917, vacated.

We are of opinion that this contract was for security for advances to move, reconstruct and operate the mill, to saw lumber in accordance with plaintiff's first contract, and, being for security, defendants cannot insist upon forfeiture of plaintiff's rights and ownership without foreclosure proceedings. Equity will not permit a breach of conditions, such as in this contract, to operate as a foreclosure. There should be an accounting between the parties in accordance with their engagements and, if there is an amount due the defendants, they should be awarded a decree of foreclosure. This accounting should cover the whole period of their dealings up to the time of taking it.

The decree entered in the court below is set aside and the case is remanded for an accounting and decree thereon, in harmony with this opinion, with costs to defendants.

FELLOWS, MCDONALD, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred. CLARK, J., concurred in the result.

PER CURIAM. Rehearing denied. The claimed verbal modification of the sawing agreement was not established by the evidence and cannot be considered upon the accounting.